15, 24, 13 people versus Andrew Davis. This is a consolidated case this morning. Davis and Graham party step forward and identify yourselves for the record. Good morning, Your Honors. Assistant State's Attorney Jessica Ball on behalf of the people. Mike Lansing on behalf of Andrew Davis. Jonathan Peter on behalf of Jonathan Graham. Good morning, everyone. We have pursued to court order an indication of how the argument will be divided with respect to the co-defendants or the defendants' cases. Mr. Krieger, you've indicated 10 minutes and Mr. Clancy 10 minutes, each for Graham and Davis, respectively. And then the State will respond. 20 minutes has been allocated for you with 5 minutes each for rebuttal. Is that correct? Yes, ma'am. All right, then, if you are ready to proceed, we are ready. Thank you, Your Honor. May it please the Court, this morning I plan to argue issue 2. The Sixth Amendment guarantees the accused a fundamental right to be confronted by accusing witnesses. This mandate reflects the understanding of the framers that the ability to cross-examine a witness is an essential part of a fair trial. Given the importance of this right, it is not easily given up. There are only two recognized bases for foregoing the right and one at issue. In this case, forfeiture by wrongdoing has been described as an extremely narrow one. Here, the State fell far short of proving forfeiture by wrongdoing under Giles v. California. The admission of untested, out-of-court statements against my client, Donna Graham, was reversible error. In Giles, the United States Supreme Court found a defendant's confrontation rights could be given up only if the defendant committed some conduct, either personally keeping a witness away or helping plan such an act. In this case, it is alleged, and there was testimony, that the initial shooting incident was an attempt to kill Mr. Strickland. There is some speculation along those lines. But there was testimony. I'm not aware of the testimony that, I mean, Strickland believed that he had been targeted, but there was no evidence as to the planning. There was some general background that there were gang fights going on, but, again, more between the gangster disciples and the four-corner hustlers. But the only evidence I believe that we have that Strickland was the target was his own testimony that he thought was the target. And if he was the target, that would not be sufficient under Giles. What about Williams statements? I'm sorry? Ashmore-Williams statements. Ashmore-Williams statements involved the co-defendant, and the confrontation right is one that is personal. Under Giles, the defendant needs to have committed some conduct, and has to have engaged in conduct designed to prevent a witness from testifying. And Ashmore-Williams statements only concerned Andrew Davis and not my client, Donnie Graham. The only testimony offered pre-trial about my client was discussions 10 weeks after the shooting, which were in the vein of gossip, and that is not sufficient under Giles v. California. There's no evidence of communication between my client and those responsible for Patrick Strickland's death, and, therefore, there can be no such a trip. But the stand is just by a preponderance of the evidence. Is that correct? And are you suggesting there wasn't sufficient evidence even to support preponderance? Absolutely, Your Honor. It's a general review, and there was nothing at all to show that my client had communicated with Karen Charleston or Jeff Allen, who are the people that the state alleged had and were indeed convicted of shooting Patrick Strickland. No evidence of communication whatsoever. And under a preponderance standard, almost any standard, that would not be sufficient to prove forfeiture by long doing. What about the Pinkerton case? The Pinkerton case has no applicability in this case after Giles v. California. Conspiracy liability, which is the state's position and was not the position of the court, the court took a somewhat more conservative position, but the state's position is that a defendant can forfeit constitutional rights without any knowledge of another person's wrongful plea. What about Dinkins? Dinkins comes after Giles. That's right. And Dinkins- In self-imputing intent. I can address both of those. With regard to Dinkins, Dinkins did acknowledge that Giles requires that a defendant must engage in conduct designed to prevent a witness from testifying, and there was no evidence of that. It said it can be imputed. I think Giles v. California is very clear that- No, I'm saying Dinkins follows Giles. That's right. And it says you can have imputed. You don't need specific evidence of- Giles contradicts that very clearly. Each defendant must have, in order for a defendant to lose his confrontation rights, there needs to be an attempt to procure the witness's unavailability. And imputing knowledge doesn't count. In Giles, there was another intent by implication argument. The government in that case had argued that intent could be implied in domestic violence cases. And the court said, no, there's not different confrontation clauses based on different crimes, based on different theories. There's one confrontation clause that protects all defendants, and it requires that in order for a defendant to give up the rights, that there be conduct and intent to keep the witness away. And in this case, there was no evidence of that under the preponderance of the evidence standard. Well, what about all the evidence that the purpose of killing Scribd in the first place was to prevent him from snitching and telling? There was zero evidence of that. The only evidence of that he cooperated was that he cooperated after the fact. But after he was not. They don't have to prove that he actually did cooperate, but the fact that they thought he did, and this is proven through the tapes, you know, jail tapes, that they believed he was a snitch. And that's the motivation for killing him. And the initial attempt where they got the wrong person, and when he was actually killed. I don't think that's a fair reading of the tapes. I think the tapes talk about him being a snitch with regard to the Cooper killing, which I think is what you're saying the initial killing is. And there's no evidence that he was properly that they thought he was a snitch before the shooting. The only time that there was any evidence that he was a snitch was after Cooper was shot, and he started to talk to police officers. And so the initial intent needed to have been to procure his unavailability. At trial, as you're saying, in a criminal investigation, there was no evidence of that. The only evidence was that the initial shooting was a gang shooting, possibly a drug dispute, but the intent required by jiles was not shown with regard to the initial shooting. And with regard to the second shooting, there was no evidence at all as to my client's participation and my client's intent. Unless your audience have any more questions, given the Sixth Amendment violation in this case, I'd ask this Court to reverse my client's convictions and remand for a new trial. Thank you. That's great. That's great. Good morning. Good morning. I want to start by picking up on some of the questions that were given to counsel just now, and specifically as to Mona Williams, who did not testify, but what she had told police was talked about during the motion to allow this evidence in, as well as at trial. As Mona Williams has a conversation with detectives two years after both of the homicides, and when she talks about a conversation that she has with Charleston, who is the person who shot Patrick, the witness, and that Charleston told her that Davis had told him that Patrick's dribbling had been tripping and that he was going to try to catch up with Patrick, which she took as hurting him for cooperation. There is no connection. One, there's no corroboration of that. Two, this is a witness who did not testify, came in through Detective Forbert. And three, the information she gives falls way below the standard of a preponderance of evidence that my client was involved, knew about, or acquiesced to the killing of this witness or that the intent of killing this witness was for him not to show up in court. That was never discussed on any jail take. It was never contemplated on any jail take. And it only comes through the testimony of this detective who spoke to this witness two years after about a conversation with Mr. Charleston. As to the Dinkins case, that is a case that is very different than the case we have here. That is a case that revolves around a group of individuals who are no doubt a group of individuals who have targeted witnesses in the past. There are specific conversations in that case in which Dowery was targeted, that in fact the defendant in that case had actually tried to kill Dowery two years before. That is a very different case than what we have here. What we have here is the murder of Cooper is in April of 2009. Evangelo in June, nine days after he goes to the grand jury, Patrick Scribbling is shot. The first conversation or the first time that this comes up is when Detective Foreberg goes and talks to my client and the only thing my client says is bring Pat here, bring Pat in, something to that effect. There is no indication there that my client even knew that Patrick had been shot four or five days before. And then you have the co-defendant's calls. I think that the state in their briefs rely on this being a conspiracy, but one thing you have to remember is that Nick Knight, who is one of the witnesses who did testify and who was impeached, or his grand jury testimony came in where it's fingered my client as one of the shooters. He tells the grand jury and ultimately the jury in this case that my client isn't even in the same gang as Graham. He tells the jury that my client is a member of the Black Peace Zones and that Graham is a member of the Gangster Recycles or Fort Warren Hustlers and that the victim in this case is a member of the Gangster Recycles. And the questions earlier about wasn't Patrick Sterling the intended target, that was only according to Sterling and why he was coming forward was because he felt bad when he talked to one of the mothers involved that he was a target. But really when you look at the facts of the case, you have two individuals who come out in hoods from an alley and shoot into a park where there's, from what I can tell from the witnesses who testified, maybe 30 people in that park. It wasn't a specific shooting of Patrick Sterling and I'm not even sure that the shooting of Patrick Sterling as he's in front of a liquor store in the city of Chicago was a targeted shooting by anyone for any reason and I don't think there's any evidence of that. I believe that they did not prove beyond a preponderance of evidence of any kind of conspiracy that involved my client or that there were any actions or actions by my client for the murder of Patrick Sterling. And that's all I have unless there's questions. Thank you. Thank you, Ms. Clancy. Good morning, Your Honors. The primary purpose of the forfeiture by wrongdoing rule is to prevent defendants from eliminating witnesses and there's two elements obviously that the state needs to prove by a preponderance of the evidence. First, that the defendant was engaged or acquiesced in wrongdoing. That two, was intended to prevent the witness from testifying. There's no doubt in this case, we're going to start, I'm going to start with the second one, there's no doubt that Patrick was killed to prevent him from testifying. The record shows that Charleston, Graham and Davis all thought that Patrick was the only eyewitness to the shooting and that's why he was killed and you see that from the record. Davis told Charleston that Patrick was the only eyewitness and tricked on them. Charleston said he was going to kill Patrick because he tricked on them. Graham said that Patrick's statement was the only evidence against them, that it wouldn't stick and that he deserved to be killed for tricking on them and then Davis derisively said to Detective Forberg when he said that he'd been identified, why don't you bring Pat forward and you have testimony in the record of the manner in which he said those words and that's not the only thing you have to look at the record. The timeline of what occurred here, Patrick wasn't killed right after the shooting. The shooting happened April 8, 2009, he wasn't killed until nearly two months later but he had testified before the grand jury on May 29 and he was killed approximately one week after that to prevent him from testifying further. And you don't even have to just focus on Patrick, you can look at what else happened out there that night of the shooting. Look how everyone acted. Nobody stayed on the scene to talk to the police, even though their friend had been shot and killed. The police had to seek them out and when they did, each of the witnesses said that they didn't want to cooperate, they had a concern that they would be killed if they did. So it may have started out as a shooting just because, but it became a shooting to prevent Patrick from testifying. And the evidence here also shows that the defendants acquiesced in the wrongdoing, they gave tacit assent. Again, Davis specifically told Charleston that Patrick was tricking on them and that he was the only eyewitness to the shooting. And then Charleston thereafter goes out and kills Patrick. Davis didn't have to say or do anything more to Charleston because they were part of a well-organized criminal enterprise. They belonged to the same gang, a gang that's well-organized that has different people have jobs and everybody knows what those jobs are. And words aren't even necessary sometimes to effectuate things within a well-organized machine like that. In this case, though, you do have talking. You have Davis saying those words to Charleston, identifying who they thought was the only eyewitness to the only person in the original conspiracy that wasn't in jail. And lo and behold, that eyewitness gets eliminated. That's anything but a coincidence. Davis' conversation with Charleston was motivated by a desire to prevent him from testifying. Those are all reasonable differences based on the record, especially where the trial court can't consider all hearsay from Ashmona, from Patrick's grand jury testimony, and where the state's burden is only a preponderance of the evidence. The defendants try to argue that they didn't personally do or say anything, and they want you to look at them each as separate single pieces. But they're not. They're part of a bigger conspiracy that works together. And you do have Davis, again, telling Charleston those words. Patrick was the only eyewitness, and he tricked on us. And Davis' words are then imputed to Graham because, again, they're all in this together. As for the case law, defendants argue that Cherry, United States v. Cherry, cannot coexist anymore with Giles. But Dinkins is the case that says that it can. It shows you that they can. And ultimately, Giles never rejected a conspiracy theory, the Pinkerton theory of liability, or tacit assent. Giles just reaffirmed that forfeiture by wrongdoing cannot apply without an intent to prevent the witness's testimony. And Dinkins shows us in that case that second prong of Cherry has to be substantiated with evidence that the defendant engaged in some type of conduct that would prevent the witness from testifying. We absolutely have that evidence here. You have Davis' statement, again, to Charleston that Patrick was the only eyewitness and that he tricked on them. Charleston was part of that original conspiracy, and they're all part of that same criminal enterprise. That's the correct application of the conspiracy liability within the forfeiture by wrongdoing analysis. And it does strike a balance between the competing interests that are at stake. One final thing would be that the trial court, when you consider the findings that the trial court made, that the defendants both knew that Patrick identified them and thought he was the only eyewitness. That Davis told Charleston that Patrick was the only eyewitness and tricked on them. Charleston said he was going to kill Patrick because he tricked on them. The trial court also found that Graham said that Patrick deserved to be killed for tricking on them. And then Charleston ultimately killed Patrick. The trial court's ultimate finding that the defendants gave tacit assent to Charleston's actions is absolutely not an abusive discretion. Those findings are not unreasonable or fanciful, given the record, especially, again, when you consider hearsay evidence is allowed, that the trial court can draw all of the reasonable inferences based on the evidence, and that the state's burden here is only a preponderance of the evidence. We met that here, and we'd ask you to affirm. If there are no questions, we would rest on our brief and request that you affirm the defendants' convictions. Thank you. Ms. Kruger, Ms. Clancy, whichever of you wants to go first. First of all, opposing counsel cites language about acquiescence as if that were the law in Illinois with respect to the Confrontation Clause claims, and it's not. No Illinois court has found culpability for forfeiture by what I'm doing based on conspiracy liability or tacit assent. Now, it's true that the Illinois rules of evidence, like the federal rules of evidence, do contain acquiescence language, but of course those rules need to yield to the Constitution rather than vice versa. Under Giles, it's very clear that the defendant needs to have engaged in conduct designed to keep a witness away. We cited the Carlson case from the Ninth Circuit, which points to the more narrow reading of the acquiescence language in the federal rule after Giles, that the acquiescence language in the rules of general rule for civil cases and for criminal cases, but in this specific case when a defendant's important constitutional rights are at issue, acquiescence is not sufficient. My second point is with regard to all the communications between the communications that were on tape. There were no communications between my client and the people responsible for Patrick Strickland's death, but with regard to all of the communications, they all happened after Strickland was killed. There's no evidence that they had any idea that Strickland was going to be killed, either of the co-defendants. In contrast to Dinkins, where after the first shooting, the defendant in that case said, let's go to the hospital and finish him off. There was nothing like that in this case. And again, there was no evidence that Mr. Strickland was initially targeted for cooperating with the police because he didn't begin to cooperate until after the shooting of Mark Cooper. And finally, opposing counsel argues that the standard of review is abuse of discretion, and it's not the standard for determining whether a confrontation cause violation has occurred as de novo, Thank you. Thank you, Ms. Green. Very briefly, the government seems to hang their hats, so to speak, on the fact that there was this conversation between Davis and Charleston, and that evidence comes in through Detective Forberg saying that he had a conversation with someone over two years later, Eshmona, who was never called to testify, that in July of 2011, she tells Detective Forberg that she had a conversation with Charleston, that Charleston had a conversation with Davis in which Davis had said, Pat is a witness against me, and that then Charleston tells Eshmona that he's going to look for Patrick. That is not even close to a preponderance of an evidence. A police detective saying that he had a conversation in July of 2011 about something, a very brief conversation in which my client may have told Charleston that Patrick was a witness against them, and that is not a preponderance of evidence that can prevail on this issue. And unless you have any questions, that's all I have. Thank you. Thank you very much. Counsel, thank you for your arguments, for your briefs.